# EXHIBIT D

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PMGI Holdings Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-12404 (CSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 341 , 3 5 7** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER 11 U.S.C. § 1129(a) AND (b) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 3020 CONFIRMING THE MODIFIED SECOND AMENDED JOINT PLAN OF REORGANIZATION OF PMGI HOLDINGS INC. ET AL. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Upon consideration of:

- the *Modified Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* (as the same may be further amended, supplemented, or modified from time to time, the **"Plan"**)[2] filed by the above-captioned debtors and debtors-in-possession (the **"Debtors"**) on November 1, 2013;

- the *Amended Disclosure Statement With Respect To The Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Under Chapter 11 Of the Bankruptcy Code* [Docket No. 258] (including all exhibits thereto, and, as the same may be further amended, supplemented or modified from time to time, the **"Disclosure Statement"**) filed by the Debtors on November 1, 2013;[3]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Blue Hen Group Inc. (9667), Argus Payments Inc. (4661), Big Island Technology Group, Inc. (9795), Confirm ID, Inc. (7020), Danni Ashe, Inc. (5271), Fastcupid, Inc. (7869), Fierce Wombat Games Inc. (2019), FriendFinder California Inc. (2750), FriendFinder Networks Inc. (0988), FRIENDFINDER VENTURES INC. (3125), FRNK Technology Group (7102), General Media Art Holding, Inc. (2637), General Media Communications, Inc. (2237), General Media Entertainment, Inc. (2960), Global Alphabet, Inc. (7649), GMCI Internet Operations, Inc. (7655), GMI On-Line Ventures, Ltd. (7656), Interactive Network, Inc. (5941), Magnolia Blossom Inc. (8925), Medley.com Incorporated (3594), NAFT NEWS CORPORATION (4385), Penthouse Digital Media Productions Inc. (1056), Penthouse Images Acquisitions, Ltd. (9228), PerfectMatch Inc. (9020), Playtime Gaming Inc. (4371), PMGI Holdings Inc. (2663), PPM Technology Group, Inc. (9876), Pure Entertainment Telecommunications, Inc. (9626), Tan Sharkfish, Inc. (1221), Snapshot Productions, LLC (7091), Streamray Inc. (2716), Streamray Studios Inc. (1009), Tan Door Media Inc. (1100),Traffic Cat, Inc. (1223), Transbloom, Inc. (1168), Various, Inc. (7762), Video Bliss, Inc. (6760), West Coast Facilities Inc. (4751), XVHUB Group Inc. (9401).  The Debtors' business address is 6800 Broken Sound Parkway NW, Suite 200, Boca Raton, FL 33487.

[2] The Plan is attached as **Exhibit A** hereto and incorporated by reference herein.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan, the

- the *Order Pursuant To Bankruptcy Code Sections 365, 1123, And 1129 And Bankruptcy Rule 6006 Approving Procedures Relating To The Assumption And Rejection Of Certain Executory Contracts And Unexpired Leases, The Fixing of Cure Amounts, And Related Notices In Connection With The Plan,* dated November 5, 2013 [Docket No. 271] (the "**Assumption/Rejection Procedures Order**");

- the *Order Granting Debtors' Motion, Pursuant To Sections 105(a), 1123(a), 1124, 1125, 1126, 1128 and 1129 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3018, 3019 And 3020 And Local Rules 3017-1 And 9006-1, For Entry Of An Order (I) Approving The Disclosure Statement, (II) Establishing Procedures For The Solicitation And Tabulation Of Votes To Accept Or Reject The Plan, (III) Approving Forms Of Notices And Ballots, (IV) Establishing Notice And Objection Procedures In Respect Thereof, (V) Setting Confirmation Hearing And Related Deadlines And (VI) Granting Related Relief* dated November 5, 2013 [Docket No. 272], (the "**Disclosure Statement Order**");

- the *Affidavit Of Service Of Solicitation Materials* dated November 27, 2013 [Docket No. 308] (the "**Solicitation Affidavit**");

- the *Notice Of Filing Of Affidavit Of Publication: USA Today* dated November 18, 2013 [Docket No. 296] (the "**Publication Notice**");

- the *Notice Of Filing Of Plan Supplement* dated November 25, 2013 [Docket No. 301] (as amended on December 13, 2013 [Docket No. 338], the "**Plan Supplement**");

- the *Affidavit Of Mailing Re: Notice Of (I) Assumption Of Executory Contracts And Unexpired Leases, (II) Fixing Cure Amounts, And (III) Deadline To Object Thereto* dated November 26, 2013 [Docket No. 306] (the "**Cure Notice Affidavit**");

- the *Notice Of Debtors' Intent To Reject Certain Leases And Executory Contracts* dated December 2, 2013 [Docket No. 313] (the "**Rejection Notice**");

- the *Affidavit Of Service Re: Notice Of Plan Supplement,* dated December 5, 2013 [Docket Nos. 320 and 321] (the "**Plan Supplement Affidavit**");

---

Disclosure Statement, or the Disclosure Statement Order (as defined herein).  Any capitalized term not defined in the Plan, the Disclosure Statement, the Disclosure Statement Order, or this Confirmation Order, but that is used in title 11 of the United States Code, as amended (the "**Bankruptcy Code**") or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

- the Transaction Support Agreement, which is attached as Exhibit E to the Disclosure Statement;

- the Bell/Staton Settlement, which is attached as Exhibit D to the Transaction Support Agreement;

- the *Order Pursuant To Sections 105(a) And 365(a) Of The Bankruptcy Code Authorizing The Assumption Of The Transaction Support Agreement* [Docket No. 136], dated October 11, 2013 (the "**TSA Assumption Order**");

- the declarations that have been filed in connection with the Confirmation Hearing (collectively, the "**Declarations**"), including:

  (i)   the *Declaration Of J. Scott Victor In Support Of Confirmation Of The Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* dated December 13, 2013 [Docket No. 343]; and

  (ii)  the *Declaration Of Ezra Shashoua In Support Of Confirmation Of The Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* dated December 13, 2013 [Docket No. 348]; and

- the *Declaration Of Brad Daniel On Behalf Of BMC Group, Inc., Regarding Voting And Tabulation Of Ballots Accepting And Rejecting The Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* [Docket No. 341], dated December 13, 2013 (the "**Voting Declaration**");

- the *Limited Objection of Watt Management Company To (A) Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code; And (B) Notice Of (I) Assumption Of Executory Contracts And Unexpired Leases, (II) Fixing Of Cure Amounts, And (III) Deadline To Object Thereto* [Docket No. 325], dated December 9, 2013 (the "**Watt Objection**");

- the *Objection Of The Securities Class Action Co-Lead Plaintiffs, On Behalf Of Themselves And All Others Similarly Situated, To The Second Amended Joint Plan Of Reorganization Involving FriendFinder Networks Inc.* [Docket No. 326], dated December 9, 2013 (the "**Greenfield Objection**");

- the *Objection By The Internal Revenue Service To The Second Amended Joint Plan Of Reorganization* [Docket No. 327], dated December 9, 2013 (the "**IRS Objection**"); and

- the *Objection Of The U.S. Securities And Exchange Commission To Confirmation Of Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* [Docket No. 329], dated December 9, 2013 (the "**SEC Objection**");

- the *Cure Amount/Assignment Objection By Microsoft* [Docket No. 316], dated December 6, 2013 (the "**Microsoft Objection**")

- *Oracle's Opposition To Debtors' Notice Of (I) Assumption Of Executory Contracts And Unexpired Leases, (II) Fixing Of Cure Amounts, And (III) Deadline To Object Thereto* [Docket No. 330], dated December 9, 2013 (the "**Oracle Objection**");

- the *Objection Of Panasonic Consumer Marketing Company Of North America To Notice Of (I) Assumption Of Executory Contracts And Unexpired Leases, (II) Fixing Of Cure Amounts, And (III) Deadline To Object Thereto* [Docket No. 331], dated December 9, 2013 (the "**Panasonic Objection**");

- the *Debtors' (I) Memorandum Of Law In Support Of The Debtors' Request For An Order Confirming The Second Amended Joint Plan Of Reorganization Of PMGI Holdings Inc. Et Al. Under Chapter 11 Of The Bankruptcy Code* [Docket No. 349] (the "**Confirmation Brief**");

- all oral representations, arguments, fact and expert testimony, documents, filings and evidence presented at or in connection with the hearing held on December 16, 2013 to consider Confirmation (the "**Confirmation Hearing**"); and

- the entire record of the Debtors' Chapter 11 Cases, as to which the Bankruptcy Court takes judicial notice.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party-in-interest to object to Confirmation have been adequate and appropriate, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and presented at the Confirmation Hearing, including but not limited to the Declarations and the Confirmation Brief, establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

(A)    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. This Bankruptcy Court has jurisdiction over the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") pursuant to sections 157 and 1334 of title 28 of the United States Code.  Since the Petition Date, venue has been, and is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and upon which the Bankruptcy Court may issue a final order.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

(B)    <u>Eligibility for Relief</u>.  The Debtors were, and are, entities eligible for relief under section 109 of the Bankruptcy Code.  The Debtors are proper proponents of the Plan under section 1121 of the Bankruptcy Code.

(C)    <u>Commencement and Joint Administration</u>.    On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  By prior order of the Bankruptcy Court authorizing the joint administration of the Chapter 11 Cases [Docket No. 44], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No official committee of unsecured creditors, trustee, or examiner has been appointed.

(D)    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly-appointed agent,

---

[4] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

including, without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases, including, but not limited to, the Confirmation Hearing. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference, and any unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

(E)     Burden of Proof. The Debtors, as the Plan Proponents, have met their burden of proving that the Plan complies with each necessary element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard for Confirmation. The Bankruptcy Court also finds that the Debtors have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

(F)     Transmittal and Mailing of Materials; Notice. The Disclosure Statement and the Plan were transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules, and such transmittal and service was adequate and sufficient, and no other or further notice is or shall be required. All Holders of Claims and Interests, and all other parties in interest, were duly given notice of, and an opportunity to be heard in connection with, the Plan, pursuant to and in satisfaction of the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, as evidenced by the Solicitation Affidavit and Publication Notice. The Publication Notice complied with the Disclosure Statement Order and all other applicable rules, laws, and regulations in all respects. Proper, timely, and adequate notice of the Confirmation Hearing and the deadline to object to the Plan has been provided to all necessary persons and entities, and such notice was sufficient and appropriate under the particular circumstances, and no other or further notice is required.

(G)    <u>Solicitation</u>.  Solicitation of votes to accept or reject the Plan was conducted in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement and Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations and, as such, the Debtors and their respective agents, representatives, attorneys, and advisors shall be entitled to the benefits and protections of section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan.  Specifically, the Solicitation Packages approved by the Bankruptcy Court in the Disclosure Statement Order (including the Disclosure Statement, the Plan, the Ballots, the Confirmation Hearing Notice, the opt out of the Plan releases, and other applicable materials) were adequate and sufficient and transmitted to and served on all Holders of Claims in the Voting Classes, and to the extent necessary, Information Packages were transmitted to other parties in interest in these Chapter 11 Cases, all in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "**Local Rules**"), and all other applicable rules, laws, and regulations and no further notice is or shall be required.  In addition, all Holders of Claims or Interests in the Unimpaired Classes and the Deemed Rejecting Classes, as well as the Holders of Unclassified Claims, were provided with Non-Voting Packages (including the Election regarding Plan releases) approved by the Bankruptcy Court in the Disclosure Statement Order.  Pursuant to the Disclosure Statement Order, the Debtors were excused from distributing Solicitation Packages or Information Packages to those Holders of Claims against or Interests in the Debtors at addresses that were determined to be undeliverable, unless the Debtors (through the Voting Agent) were provided with an accurate address for each Holder of Claims against or Interests in the Debtors previously undeliverable

address not less than five (5) calendar days prior to the Solicitation Commencement Date, and failure to distribute Solicitation Packages to such Holders did not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).  If a Holder of Claims against or Interests in the Debtors changed its mailing address after the Solicitation Commencement Date, the burden was solely on such Holder, not the Debtors, to notify the Debtors and the Voting Agent of its new address.  Accordingly, votes for acceptance and rejection of the Plan were solicited by the Debtors in good faith.

(H)     <u>Voting Declaration</u>.   On December 13, 2013, the Debtors filed the Voting Declaration certifying the method and results of Ballot tabulation (as set forth on the Voting Report attached to the Voting Declaration) for each of the Classes entitled to vote on the Plan.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

(I)     <u>Classes Deemed to Have Accepted the Plan</u>.  Classes 3A-MM (Other Secured Claims), 4A-MM (Other Priority Claims), 5A-MM (General Unsecured Claims), 6A-MM (Intercompany Claims), and 8B-MM (Intercompany Interests) are Unimpaired and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(J)     <u>Classes Deemed to Have Rejected the Plan</u>.  Classes 7A-MM (Securities Litigation Claims) and 8A (Existing FFN Equity Interests) shall not receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

(K)     <u>Classes Voting to Accept the Plan</u>.  As evidenced by the Voting Report, Classes 1A-MM (First Lien Noteholder Claims and First Lien Guaranty Claims) and 2A-MM (Second Lien Noteholder Claims and Second Lien Guaranty Claims) have voted to accept the Plan.

(L)     <u>Plan Supplement</u>.  To the extent applicable, on November 25, 2013, the documents identified to be included in the Plan Supplement were filed [Docket No. 301] (as subsequently amended on December 13, 2013 [Docket No. 338]) as required by the Bankruptcy Code, the Bankruptcy Rules, and all other applicable orders, and federal, state, and local laws, rules and regulations.  Notice of the applicable Plan Supplement Documents was good and proper in accordance with the Bankruptcy Code, Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.  The Debtors are authorized to modify the Plan Supplement in accordance with the Plan.

(M)     <u>Modifications to Plan</u>.  Any modifications to the Plan described or set forth herein constitute technical changes or changes with respect to particular Claims by agreement with the Holders of such Claims, and do not materially or adversely affect or change the treatment of any other Claims or Interests.  Prior notice regarding the substance of any modifications to the Plan, coupled with the filing with the Bankruptcy Court of the Plan, as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all such modifications.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who are conclusively presumed to have accepted

the Plan or who voted to accept the Plan are deemed to have accepted the Plan as modified by the Plan modifications.  The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan, as modified, shall constitute the Plan submitted for Confirmation.

(N)      Bankruptcy Rules 3016(a) and (b).  The Plan is dated and identifies the entity submitting it as the Debtors, which term is defined in the Plan, thereby satisfying Bankruptcy Rule 3016(a).  The Disclosure Statement was filed with the Clerk of the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

(O)      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(1)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to the Administrative Claims and Priority Tax Claims listed in Article III of the Plan, which need not be classified, the Plan designates eight (8) Classes of Claims and Interests, based on differences in the legal nature or priority of such Claims against and Interests in each Debtor.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only, respectively, Claims and Interests that are substantially similar to the other Claims and Interests within that Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purposes, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Interests.  Therefore, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)   Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).   Article III of the Plan specifies that Claims in Classes 3 (Other Secured Claims), 4 (Other Priority Claims), 5 (General Unsecured Claims), 6 (Intercompany Claims) and 8B-MM (Intercompany Interests) are Unimpaired under the Plan.   Additionally, Article III of the Plan specifies that Administrative Claims and Priority Tax Claims are Unimpaired, although these Claims are not classified under the Plan.   Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

(3)   Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).   Article III of the Plan designates Classes 1 (First Lien Noteholder Claims and First Lien Guaranty Claims), 2 (Second Lien Noteholder Claims and Second Lien Guaranty Claims), 7 (Securities Litigation Claims) and 8A (Existing FFN Equity Interests) as Impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4)   No Discrimination (11 U.S.C. § 1123(a)(4)).   Article III of the Plan provides the same treatment and opportunity for each Claim or Interest within a particular Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.   The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(5)   Implementation of Plan (11 U.S.C. § 1123(a)(5)).   The Plan, including, among other things, Article V of the Plan and the Plan Supplement, provide adequate and proper means for the Plan's implementation.   In addition, the Debtors have filed many of the documents necessary to implement the Plan in the Plan Supplement.

(6)     No Issuance of Non-Voting Securities (11 U.S.C. § 1123(a)(6)).  The Plan does not propose the issuance of nonvoting equity or other securities; accordingly the prohibition on issuance of nonvoting securities is inapplicable.

(7)     Designation of Directors (11 U.S.C. § 1123(a)(7)).  As set forth in the Plan Supplement, the initial officers and directors of the Reorganized FFN have been selected in accordance with the Transaction Support Agreement.   The current post-petition officers and directors of the remaining Reorganized Debtors will remain the same on the Effective Date as specified in the Plan Supplement.   Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

(8)     Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (a) Distributions to Holders of Allowed Claims; (b) the rejection or assumption of Executory Contracts and Unexpired Leases; (c) the retention of, and right to enforce, sue on, settle, or compromise Claims and/or Causes of Action; (d) resolution of Disputed Claims; (e) allowance of certain Claims; (f) the exculpation and release of various entities as set forth in Article XI of the Plan; (g) and the various injunctions set forth in the Plan, thereby satisfying section 1123(b).

(9)     Cure of Defaults (11 U.S.C. § 1123(d)).  Section 6.03 of the Plan provides that any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, solely by Cure.   The Assumption/Rejection Procedures Order, which is expressly incorporated herein by reference, in conjunction with the Plan, provides appropriate procedures

with respect to the cure of defaults and/or the provision of adequate assurance of future performance. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

(P)     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).   The Debtors have complied with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code, and Bankruptcy Rules 3017, 3018 and 3019.

Votes to accept or reject the Plan were solicited by the Debtors, with the assistance of their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents, after the Bankruptcy Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

The Debtors, with the assistance of their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents, have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan.

The Debtors and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such

distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

(Q)   Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Transaction Support Agreement, the Bell/Staton Settlement, the TSA Assumption Order, the Plan itself, and the process leading to its formulation. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

The Debtors had and have authority to propose and implement the Plan. The Plan is the product of arm's-length negotiations between the Debtors and the Consenting First Lien Noteholders and the Consenting Second Lien Noteholders. Additionally, the Debtors, the Consenting First Lien Noteholders, the Consenting Second Lien Noteholders, and Messrs. Bell and Staton (Holders of 100% of the Cash Pay Second Lien Notes) negotiated the terms of the Bell/Staton Settlement. As a result, the holders of the Cash Pay Second Lien Notes agreed to support the Plan. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to restructure their balance sheet and maximize stakeholder value. Also, entry into the Transaction

Support Agreement was the product of arms-length negotiations, conducted in good faith among the Debtors and the Consenting First Lien Noteholders and the Consenting Second Lien Noteholders.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

(R)     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(S)     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement designates the directors and officers of FriendFinder Networks Inc. and otherwise states that the current post-petition directors and officers of the other Debtors will continue to serve in such capacities.

(T)     No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

(U)     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached as **Exhibit C** to the Disclosure Statement and other evidence in support of the Plan that was proffered or adduced at or prior to, the Confirmation Hearing, or in the Declarations: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that each Holder of an Impaired Claim or Interest either has accepted

the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date, taking into account the existence of any potential avoidance actions.

(V)     Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 3 (Other Secured Claims), 4 (Other Priority Claims), 5 (General Unsecured Claims), 6 (Intercompany Claims), and 8B-MM (Intercompany Interests) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and therefore satisfy section 1129(a)(8) of the Bankruptcy Code.  Classes 1 (First Lien Noteholder Claims and First Lien Guaranty Claims) and 2 (Second Lien Noteholder Claims and Second Lien Guaranty Claims) have voted to accept the Plan and therefore section 1129(a)(8) is satisfied with respect to Classes 1 and 2.

Section 1129(a)(8) has not been satisfied with respect to Classes 7 (Securities Litigation Claims) and 8A (Existing FFN Equity Interests) which will not receive any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Nevertheless, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 7 (Securities Litigation Claims) and 8A (Existing FFN Equity Interests), as described below.

(W)     Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Priority Tax Claims pursuant to Article III of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code, as all such Claims that are Allowed will be paid in full in Cash on or as soon as practicable after the Effective Date (to the extent not previously paid).

(X)      Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).  As set forth in the Voting Declaration, Classes 1 and 2 have accepted the Plan.  Accordingly, at least one Impaired Class has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

(Y)      Feasibility (11 U.S.C. § 1129(a)(11)).   The Disclosure Statement, Plan, Plan Supplement, Confirmation Brief, the Declarations, and all evidence proffered, adduced, or presented at the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and that Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors; and (e) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.   All necessary regulatory approvals contemplated by the Plan are likely to be received.

(Z)      Payment of Fees (11 U.S.C. § 1129(a)(12)).  Section 12.03 of the Plan provides that all fees payable under section 1930 of title 28 of the United States Code have been paid or will be paid on and after the Effective Date, and thereafter as may be required, for each Debtor until entry of a final decree with respect to such Debtor, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

(AA)     Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16).  The Debtors do not provide retiree benefits, are not individuals, do not owe any domestic support obligations, and are not nonprofit corporations.   Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

(BB)   <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)); Confirmation of Plan Over Nonacceptance of Certain Impaired Classes</u>.  The classification and treatment of Claims and Interests in the Plan is proper and complies with section 1122 of the Bankruptcy Code. The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met because, based upon the evidence proffered, adduced, or presented by the Debtors at and in connection with the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class that has not accepted the Plan, as required by section 1129(b)(1) of the Bankruptcy Code.  The Plan satisfies the "fair and equitable" requirement notwithstanding that Classes 7 (Securities Litigation Claims) and 8A (Existing FFN Equity Interests) are deemed to reject the Plan, because the Holder of any Claim or Interest junior to the Claims of Classes 7 and 8A will not receive or retain any property under the Plan on account of such junior Claim or Interest and the Plan does not discriminate unfairly with respect to Classes 7 and 8A.  Further, no Class of Claims senior to Classes 7 and 8A will receive more than the full Allowed amount of its Claims.  The treatment of Classes 7 and 8A satisfies the requirements of Bankruptcy Code section 1129; such treatment does not discriminate unfairly and is fair and equitable within the meaning of Bankruptcy Code section 1129(b)(2)(B).

(CC)   <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

(DD)   <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities

Act of 1933 (15 U.S.C. § 77e).   Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

(EE)   <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  None of these Chapter 11 Cases is a "small business case" as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

(FF)   <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

(GG)   <u>Good Faith</u>.  The Debtors have proposed the Plan in good faith, with the legitimate and honest purposes of maximizing the value of each of the Debtors' Estates for the benefit of their stakeholders.  Further, the Transaction Support Agreement and Bell/Staton Settlement were the products of arms-length negotiations conducted in good faith.  Accordingly, the Debtors and the Consenting First Lien Noteholders, the Consenting Second Lien Noteholders, and Messrs. Bell and Staton (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and representatives) have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

(HH)   <u>Disclosure</u>.  The Debtors have disclosed all material facts regarding: (a) the distribution of Cash under the Plan; (b) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate or limited liability company (as applicable) action to be taken by or required of the Debtors; and (c) the adoption, execution, and

delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

(II)    Approval of Settlements and Compromises.  Pursuant to sections 105, 363, and 1123(b)(3) of the Bankruptcy Code, Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, or any Distribution to be made on account of an Allowed Claim, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, Litigation Rights, Avoidance Actions, Causes of Action, and controversies relating to the contractual, legal, subordination, or other rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, Litigation Rights, Avoidance Actions, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that any such compromise and settlement is in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests, and is fair, equitable, and reasonable.   The settlement and compromise of Claims and Interests is the product of arm's length negotiations and is approved pursuant to Bankruptcy Rule 9019.

(JJ)    Rule 54(b) Judgment.  To the extent Rule 54(b) of the Federal Rules of Civil Procedure (as incorporated by Bankruptcy Rule 7054 made applicable to this proceeding pursuant to Bankruptcy Rule 9014) is or may be applicable, there is no just reason for delay of entry of a separate and final judgment confirming the Plan pursuant to section 1129 of the Bankruptcy Code with respect to each of the Debtors.

(KK)    Conditions Precedent to Confirmation.   Each of the conditions precedent to Confirmation, as set forth in Section 9.01 of the Plan, has been satisfied or waived in accordance with the provisions of the Plan.

(LL)   <u>Implementation</u>.  All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith, at arm's length, and are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.

(MM)   <u>Valuation</u>.   Based upon the Disclosure Statement, Plan, Plan Supplement, Confirmation Brief, the Declarations, and all evidence proffered, adduced, or presented at the Confirmation Hearing, the estimated Reorganized Enterprise Value of the Debtors as of December 11, 2013 is approximately $253,234,100 to $280,374,500 and the fair market value of the New Common Stock is $20,378,500.

(NN)   <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.   <u>Notice</u>.   Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.   <u>Solicitation</u>.   The solicitation of votes on the Plan and the Solicitation Packages complied with the solicitation procedures in the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.   <u>Confirmation</u>.   The Plan, including the Plan Supplement, and all other documents and agreements necessary to implement the Plan (as the Plan, Plan Supplement and

such other documents may be expressly amended by this Confirmation Order or in accordance with the Plan) and each of their provisions are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof, are authorized and approved as finalized, executed, and delivered. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors reserve their rights to alter, amend or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall, as applicable, constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms. The terms of the Plan, the Plan Supplement and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order.

4.    Record Closed. The record of the Confirmation Hearing is closed.

5.    Findings of Fact and Conclusions of Law. The Findings of Fact and the Conclusions of Law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the

Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following constitute findings of fact or conclusions of law, they are adopted as such. To the extent any findings of fact or conclusions of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitute an order of the Bankruptcy Court, they are adopted as such.

6.    Objections.  All objections to Confirmation have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order.  To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein), shall be, and hereby are, overruled on the merits.  Notwithstanding any provision to the contrary in the Plan, this Order confirming the Plan, and any implementing Plan documents (collectively, the "**Documents**"), nothing shall: (1) affect the ability of the Internal Revenue Service ("**IRS**") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' estates; (2) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; or (3) discharge any claim of the IRS described in 11 U.S.C. Section 1141(d)(6).  Moreover, notwithstanding any provision to the contrary in the Documents, the Debtors and the Reorganized Debtors agree that they shall comply with the provisions of the Internal Revenue Code.

7.    Plan Classification Controlling.  The classifications of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of

the Plan. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

8.    Binding Effect.  Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall immediately be effective and enforceable and deemed binding upon the Debtors and any entity acquiring or receiving property or a Distribution under the Plan and any Holder of a Claim against or Interest in the Debtors, including all Governmental Authorities, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not the Claim or Interest is Allowed and, to the fullest extent under applicable law, whether or not such Holder or entity has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan or the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, if any, of such entities.

9.    Objection to Claims.  Except insofar as a Claim is Allowed under the Plan, the Reorganized Debtors, the Consenting First Lien Noteholders, the Consenting Second Lien Noteholders, or any other party in interest, as applicable, shall have the non-exclusive authority to file objections to Claims, provided, however, that the Reorganized Debtors shall have the sole and exclusive authority to settle, or compromise, any objections to Claims, including, without limitation, Claims for reclamation under section 546(c) of the Bankruptcy Code.  Any objection to

Claims shall be served and filed on or before the latest of (a) one hundred eighty (180) days after the Effective Date, or (b) such later date as may be fixed by the Bankruptcy Court.

10.   <u>Disputed Claims</u>.   On and after the Effective Date, except as otherwise provided herein, all Allowed Claims shall be paid in accordance with the Plan.  If the Debtors, the Consenting First Lien Noteholders, the Consenting Second Lien Noteholders, or any other party in interest dispute any Claim, such dispute shall be determined, resolved or adjudicated, in accordance with Articles VII and VIII of the Plan.  Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Disputed Claim to postpetition interest on such Claim.

11.   <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2))</u>.  Except as otherwise specifically provided in the Plan, or in any stipulation, contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, all Executory Contracts and Unexpired Leases shall be assumed (including the amended and restated employment agreements assumed by the Debtors in connection with the Plan Supplement) except for an Executory Contract or Unexpired Lease that (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (ii) previously expired or was terminated pursuant to its own terms, or (iii) is the subject of a notice of rejection previously filed by the Debtors.  This Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the Executory Contract and Unexpired Lease assumptions described above, as of the Effective Date.  Contracts or leases entered into after the Petition Date will be performed by the Reorganized Debtors in the ordinary course of business.

12.   Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is in default, if any, shall be satisfied, under section

365(b)(1) of the Bankruptcy Code, by Cure.    In accordance with the Plan and Assumption/Rejection Procedures Order, unless the Debtors served on the counterparty to an Executory Contract or Unexpired Lease a Cure Notice to the contrary, which Cure Notices were served by the Debtors on November 11, 2013, all Cure amounts for each Executory Contract and Unexpired Lease being assumed pursuant to the Plan shall be $0.

13.    Watt Objection.  In complete resolution of the Watt Objection, the Debtors shall assume that certain lease agreement with Watt Management Company ("**Watt**") regarding the commercial space located at 19749 Dearborn Street, Chatsworth, California 91311 and pay Watt an amended Cure amount of $5,208.07.

14.    Neustar Objection.  In complete resolution of the informal Cure Notice objection of NeuStar, Inc. ("**NeuStar**"), the Debtors shall assume that certain Master Services Agreement with NeuStar (and any other Executory Contracts by and among the parties) and pay NeuStar an amended Cure amount of $134,448.70.

15.    Microsoft Objection.  In complete resolution of the Microsoft Objection, the Debtors shall assume all Executory Contracts (the "**Microsoft Contracts**") by and between the Debtors and Microsoft Corporation (including all affiliates, "**Microsoft**").  If the Effective Date does not occur on or before December 31, 2013, the Debtors shall pay Microsoft all amounts necessary to be current under the Microsoft Contracts prior to the assumption of the Microsoft Contracts.

16.    Oracle Objection.  In complete resolution of the Oracle Objection, the Debtors shall assume all Executory Contracts with Sun Microsystems, Inc. and Oracle USA, Inc. (the "**Oracle Contracts**").  All post-petition amounts due under the Oracle Contracts shall be paid as they become due.

17.     <u>Panasonic Objection</u>.  In complete resolution of the Panasonic Objection, the Debtors shall assume that certain Viera Connect Product Integration Agreement with Panasonic Consumer Marketing Company of North America ("**Panasonic**") and pay Panasonic an amended Cure amount of $26,901.60.

18.     <u>Rejection of Contracts</u>.   The Executory Contracts with OSS-Integrators, Inc., Marc H. Bell, and Daniel S. Staton, as listed in the Rejection Notice and Plan Supplement (the "**Rejected Contracts**"), shall be deemed rejected as of the Effective Date of the Plan.  Holders of Claims against the Debtors arising from the rejection by the Debtors of the Rejected Contracts must file a proof of claim on or before thirty (30) days after entry of this Confirmation Order.

19.     <u>Bar Date for Rejection Damage Claims</u>.  Unless otherwise provided by a Bankruptcy Court order, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, or any of their properties unless a Proof of Claim is Filed with the claims agent and served upon counsel to the Debtor within thirty (30) days after the later of the date of (a) entry of the Confirmation Order and (b) entry of the order rejecting the applicable Executory Contract or Unexpired Lease.  The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease in the Plan; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.

20.     <u>General Authorizations</u>.   The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors to take or cause to be taken all corporate actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall

be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the partners, members, stockholders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers, partners and directors of the Debtors and the Reorganized Debtors are authorized and directed to execute and deliver the agreements, documents, and instruments contemplated by the Plan and Plan Documents in the name and on behalf of the Debtors and the Reorganized Debtors.

21.     <u>Continued Corporate Existence</u>. After the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject to the terms of the Plan and the Plan Supplement, and all documents and exhibits thereto implementing the provisions of the Plan.

22.     <u>Revesting of Assets</u>. Except as otherwise provided in the Plan, or in the Confirmation Order, and pursuant to section 1123(b)(3) and sections 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all of the property and assets of the Debtor and all Causes of Action and Litigation Rights (other than those released pursuant to Section 11.01 of the Plan), including the Avoidance Actions, shall automatically revest in the Reorganized Debtors, free and clear of all Claims, Liens and Interests. As of the Effective Date, all such property of each Reorganized Debtor shall be free and clear of all Claims, Liens and Interests, except as specifically provided in the Plan or the Confirmation Order and the Reorganized Debtor shall receive the benefit of any and all discharges under the Plan.

23.   <u>Preservation of Causes of Action, Litigation Rights and Avoidance Actions</u>.
Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, on the Effective Date, the Reorganized Debtors shall retain and may enforce, and shall have the sole right to enforce or prosecute, any Claims, demands, rights, and Causes of Action or Litigation Rights, that the Debtors may hold against any Entity, including, without limitation, all Avoidance Actions.  The Reorganized Debtors or their successors may pursue such retained claims, demands, rights or Causes of Action or Litigation Rights, including, without limitation, Avoidance Actions, as appropriate, in accordance with the best interests of the Reorganized Debtors or its successor holding such Claims, demands, rights, Causes of Action or Litigation Rights.  If, as a result of the pursuit of any Litigation Rights or Avoidance Actions, a Claim would arise from a recovery pursuant to section 550 of the Bankruptcy Code after Distributions under the Plan have commenced, making it impracticable to treat the Claim in accordance with the applicable provisions of Article VII of the Plan, the Reorganized Debtors shall be permitted to reduce the recovery by an amount that reflects the value of the treatment that would have been accorded to the Claim under the Plan, thereby effectively treating the Claim through the reduction.

24.   <u>Cancellation of Existing Securities and Agreements</u>.  Except for purposes of evidencing a right to distribution under the Plan or otherwise as provided hereunder, on the Effective Date, the First Lien Notes and the Second Lien Notes, as well as the First Lien Indenture, the Second Lien Indentures, and all agreements relating thereto, shall be deemed automatically cancelled, terminated and of no further force or effect, without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the parties, as

applicable, under the agreements, indentures, and certificates of designation governing such Claims or Interests shall be discharged; provided, however, that (a) the First Lien Indenture all agreements related thereto shall continue in effect solely for the limited purposes of (i) allowing the First Lien Indenture Trustee to make any Distributions on account of the First Lien Notes to the Plan, (ii) to perform such other necessary administrative or other functions with respect thereto and with respect to other obligations set forth under the Plan and Confirmation Order, and (iii) allowing the First Lien Indenture Trustee to assert, in accordance with the terms of the Plan and Confirmation Order, any right to indemnification or contribution it may have under the First Lien Indenture and any other related agreements respectively, in connection with or in any way relating to the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan arising from and after the Petition Date through and including the Effective Date, (b) the Cash Pay Second Lien Indenture and all agreements related thereto shall continue in effect solely for the limited purposes of allowing the Second Lien Cash Pay Indenture Trustee to have the benefit of and enforce all the rights and protections and other provisions of the Cash Pay Second Lien Indenture and all other related agreements respectively, vis-à-vis the Second Lien Noteholders, respectively, including any priority in payment and lien rights as set forth in those documents and in the Intercreditor Agreement, with respect to any Distribution to their respective Noteholders under the Plan, and (c) the Non-Cash Pay Second Lien Indenture and all agreements related thereto shall continue in effect solely for the limited purposes of allowing the Second Lien Non-Cash Pay Indenture Trustee to assert, in accordance with the terms of the Plan and Confirmation Order, any right to compensation, reimbursement of expenses (including but not limited to reasonable attorney's fees), indemnification, contribution or other claims they may have under the Non-Cash Pay Second Lien Indenture and any other related agreements respectively, in

connection with or in any way relating to the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan arising from and after the Petition Date through and including the Effective Date. On the Effective Date, Reorganized FFN shall file a Form 15 with the Securities and Exchange Commission to deregister the Existing FFN Equity and suspend its reporting obligations with the Securities and Exchange Commission in connection therewith. Notwithstanding anything to the contrary herein, the 2013 PIK Notes shall be deemed rescinded and extinguished as if the 2013 PIK Notes had not been issued and are not receiving any consideration under the Plan. Any tax reporting forms related to the Non-Cash Pay Second Lien Notes or accounting by the Debtors related to the 2013 PIK Notes shall be prepared in a manner consistent with the Plan.

25.   <u>Fees and Expenses</u>.   On the Effective Date (or as soon as practicable following the Effective Date for any invoices delivered after the Effective Date relating to periods prior to the Effective Date), the Debtors or Reorganized Debtors, as applicable, shall pay in cash, the reasonable fees and expenses of the Consenting First Lien Noteholders, the Consenting Second Lien Noteholders, the First Lien Indenture Trustee and the Second Lien Non-Cash Pay Indenture Trustee (each including without limitation reasonable attorneys' fees) incurred through the Effective Date to the extent not previously paid, provided, however, that to the extent that any such party has not submitted an invoice for such fees and expenses, then such party shall provide the Debtors with an estimate of such fees and expenses no later than three days prior to the Effective Date, and the Debtors shall create a reserve for the payment of those fees and expenses after the Effective Date. To the extent that there is a dispute as to the reasonableness of any such fees and expenses, the Debtors or the Reorganized Debtors shall pay the undisputed portion of such fees

and expenses, and the party requesting the payment of fees and expenses may submit the dispute to the Bankruptcy Court for resolution.

26.    Bell/Staton Settlement.  The Bell/Staton Settlement is the product of arm's length negotiations and is approved pursuant to Bankruptcy Rule 9019.  In accordance with the Bell/Staton Settlement, Bell and Staton shall remain retained as consultants by the Debtors through the Effective Date and such retention shall be terminated upon the later of the Effective Date or receipt of the cash payments described in the Bell/Staton Settlement.

27.    New First Lien Notes.  On, as of, or after the Effective Date, the Reorganized Debtors shall issue the New First Lien Notes and may take such actions as may be necessary or appropriate, in accordance with any applicable law, in connection therewith.  Subject to Sections 9.01 and 9.02 of the Plan, the New First Lien Notes, the New First Lien Indenture, and all agreements, supplemental indentures, guarantees, documents, notes, and instruments in respect of the New First Lien Notes and the New First Lien Indenture (collectively, the "**New First Lien Note Documents**") and the transactions contemplated thereby pursuant to the New First Lien Note Documents, are approved in their entirety, and on the Effective Date the New First Lien Note Documents will be in full force and effect and will be valid, binding, and enforceable in accordance with their terms without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity or other act or action under applicable laws.  Subject to Sections 9.01 and 9.02 of the Plan, the Debtors are authorized, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, to: (a) perform under the New First Lien Notes consistent with the New First Lien Note Documents; and (b) execute and deliver all First Lien Note Documents.  Subject to Sections 9.01 and 9.02 of the Plan, the loans and other extensions of credit made pursuant to the New First Lien Note Documents and the granting of

Liens, including, without limitation, any Liens that are to be granted on the Effective Date pursuant to the New First Lien Note Documents, to secure such loans and other extensions of credit are approved and authorized in all respects.  On the Effective Date, such Liens shall be valid, binding, perfected and enforceable liens and security interests in the property described in the New First Lien Note Documents, and the granting of such Liens, the making of such loans and other extensions of credit, and the execution and consummation of the New First Lien Notes shall not be subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code) of any kind under any applicable laws as of the Effective Date.  The First Lien Indenture Trustee is directed to deliver on the Effective Date to the indenture trustee under the New First Lien Indenture all physical Collateral securing the First Lien Notes that is in the First Lien Indenture Trustee's control or possession, if any.

28.     Compromise and Settlement Under the Plan.  NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE ALLOWANCE, CLASSIFICATION, AND TREATMENT OF ALL ALLOWED CLAIMS AND ALLOWED INTERESTS AND THEIR RESPECTIVE DISTRIBUTIONS AND TREATMENTS HEREUNDER TAKE INTO ACCOUNT AND CONFORM TO THE RELATIVE PRIORITY AND RIGHTS OF THE CLAIMS AND INTERESTS IN EACH CLASS IN CONNECTION WITH ANY CONTRACTUAL, LEGAL, AND EQUITABLE SUBORDINATION RIGHTS RELATING THERETO.  AS OF THE EFFECTIVE DATE, ANY AND ALL SUCH RIGHTS DESCRIBED IN THE PRECEDING SENTENCE ARE SETTLED, COMPROMISED, AND RELEASED PURSUANT TO THE PLAN. THE CONFIRMATION ORDER CONSTITUTES THE BANKRUPTCY COURT'S FINDING AND DETERMINATION THAT THE

SETTLEMENTS REFLECTED IN THE PLAN, ARE (1) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (2) FAIR, EQUITABLE AND REASONABLE, (3) MADE IN GOOD FAITH, AND (4) APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019. IN ADDITION, THE ALLOWANCE, CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS TAKES INTO ACCOUNT ANY CAUSES OF ACTION, CLAIMS, OR COUNTERCLAIMS, WHETHER UNDER THE BANKRUPTCY CODE OR OTHERWISE UNDER APPLICABLE LAW, THAT MAY EXIST BETWEEN THE DEBTORS AND THE RELEASING PARTIES; AND AS BETWEEN THE RELEASING PARTIES AND THE RELEASED PARTIES. AS OF THE EFFECTIVE DATE, ANY AND ALL SUCH CAUSES OF ACTION, CLAIMS AND COUNTERCLAIMS ARE SETTLED, COMPROMISED, AND RELEASED PURSUANT TO THE PLAN AND THE CONFIRMATION ORDER.

29.    Exemption Under Section 1145 of the Bankruptcy Code.  To the extent available, the issuance of the New First Lien Notes and the New Common Stock shall be exempt from SEC registration under section 1145 of the Bankruptcy Code.  To the extent section 1145 is unavailable with respect to such New First Lien Notes and New Common Stock, the issuance of such securities shall be exempt from SEC registration as a private placement pursuant to Section 4(2) of the Securities Act of 1933, as amended, and/or the safe harbor of Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements.

30.    Restructuring Transactions.  On, as of, or after the Effective Date, the Reorganized Debtors may enter into such transactions and may take such actions as may be necessary or appropriate, in accordance with any applicable law, to effect any Restructuring

Transaction, to otherwise simplify the overall corporate or operational structure of the Reorganized Debtors, to achieve corporate or operational efficiencies, or to otherwise improve financial results; provided that such Restructuring Transactions or actions are not otherwise inconsistent with the Plan, the Transaction Support Agreement, Distributions to be made under the Plan, the New Corporate Governance Documents, the New First Lien Notes or the New First Lien Note Indenture or the related collateral documents.   The actions to effect the Restructuring Transactions may include, without limitation: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, conversion, restructuring, recapitalization, disposition, liquidation or dissolution containing terms that are consistent with the terms herein and that satisfy the requirements of applicable law and such other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, disposition, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms herein and having such other terms to which the applicable entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, conversion or dissolution (or similar instrument) pursuant to applicable law; and (iv) all other actions which the applicable entities may determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with such transactions.   The Restructuring Transactions may include one or more mergers, consolidations, conversions, restructurings, recapitalizations, dispositions, liquidations or dissolutions, as may be determined by the applicable Debtors or Reorganized Debtors to be necessary or appropriate to effect the purposes of such Restructuring Transactions for the benefit of the Reorganized Debtors, including, without limitation, the potential simplification of the organizational structure of the Reorganized Debtors.  In each case in which the surviving, resulting

or acquiring person in any such Restructuring Transaction is a successor to a Debtor or Reorganized Debtor, such surviving, resulting or acquiring person shall perform the obligations of the applicable Debtor or Reorganized Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Debtor or Reorganized Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring person, which may provide that another Debtor or Reorganized Debtor shall perform such obligations.   Implementation of the Restructuring Transactions shall not affect any distributions, discharges, indemnification obligations, exculpations, releases or injunctions set forth in the Plan. The Restructuring Transactions are authorized and approved pursuant to, among other provisions, sections 1123 and 1141 of the Bankruptcy Code and section 303 of title 8 of the Delaware Code, if applicable, without any further notice, action, third-party consents, court order or process of any kind, except as otherwise set forth in the Plan or in the Confirmation Order.

31.   <u>Governmental Approvals Not Required</u>.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other Governmental Authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

32.   <u>Filing and Recording</u>. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the

duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

33.    Exemption From Certain Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from the Debtors to the Reorganized Debtors or any other Person or Entity pursuant to the Plan, including the New Common Stock and New First Lien Notes, and the granting or recording of any Lien or mortgage on any property under the New First Lien Notes, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.   State or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

34.    Administrative Claims.  All Administrative Expense Requests (other than as set forth in Sections 3.01(a), 12.01, 12.02, or 12.03 of the Plan or Administrative Claims for Taxes) must be made by application Filed with the Bankruptcy Court and served on counsel for the Reorganized Debtors **no later than forty-five (45) days after the Effective Date** or their Administrative Claims shall be forever barred.  In the event that the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, (a) no application seeking payment of an Administrative Claim need be Filed with respect to an undisputed postpetition obligation which was paid or is payable by the Debtors in the ordinary course of business; provided, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation

through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; and (b) no application seeking payment of an Administrative Claim need be Filed with respect to Cure owing under an Executory Contract or Unexpired Lease if the amount of Cure is fixed or proposed to be fixed by order of the Bankruptcy Court pursuant to a motion to assume and fix the amount of Cure Filed by the Debtors and a timely objection asserting an increased amount of Cure Filed by the non-Debtors party to the subject contract or lease.  With respect to Administrative Claims, the last day for Filing an objection to any Administrative Claim will be the later of (a) 180 days after the Effective Date, (b) 90 days after the filing of such Administrative Claim or (c) such other date specified in the Plan, or ordered by the Bankruptcy Court.

35.    Professional Fee Claims.  All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code must be made by application Filed with the Bankruptcy Court and served on the Reorganized Debtors, their counsel and other necessary parties-in-interest **no later than sixty (60) days after the Effective Date**, unless otherwise ordered by the Bankruptcy Court.  Objections to such applications must be Filed and served on the Reorganized Debtors, their counsel and the requesting Professional or other Entity on or before the date that is thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application was served. The Reorganized Debtors may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services

rendered to it after the Effective Date.  Notwithstanding anything to the contrary in the Plan, Warren H. Smith & Associates, P.C. (the "**Fee Auditor**")[5] shall continue to perform the duties set forth in the Fee Auditor Order[6] until all final requests for payment of Professional Fee Claims have been approved by the Bankruptcy Court. Following the Effective Date, the Reorganized Debtors shall pay in cash, within thirty (30) days of receipt of an invoice from the Fee Auditor, all reasonable fees and expenses of the Fee Auditor that are incurred after the Effective Date, without the need for any further authorization from the Bankruptcy Court. In the event that the Reorganized Debtors object to payment of such invoice from the Fee Auditor for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the Reorganized Debtors.

36.    Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the Reorganized Debtors.  The obligation of each of the Reorganized Debtors to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Chapter 11 Cases are closed.

37.    Settlements.  Any and all compromises or settlements reflected in the Plan are hereby approved.

---

[5] The Fee Auditor shall be included within the definition of "Professional" as defined in Section 1.122 of the Plan.

[6] "Fee Auditor Order" means the Bankruptcy Court's November 27, 2013 *Order Appointing Fee Auditor and Establishing Related Procedures Concerning the Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications* [Docket No. 307].

38.  <u>Distributions</u>.  Except as otherwise specifically provided in the Plan, the distributions, rights and treatments that are provided in the Plan shall be in full and complete satisfaction, discharge and release in accordance with the Plan.  Distributions received under the Plan are in exchange for fair and reasonably equivalent value and do not constitute a fraudulent conveyance or transfer and are not otherwise avoidable under any provision of the Bankruptcy Code or applicable non-bankruptcy law.

39.  <u>Discharge</u>.  As of the Effective Date, <u>except as provided in the Plan or this Confirmation Order</u>, all Persons shall be precluded from asserting against the Debtors or any of their assets or properties, any other or further Claims, Interests, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.

40.  <u>Releases, Exculpation, Injunction and Related Provisions</u>.  It is hereby ordered that the Bankruptcy Court approves of and grants the releases, exculpations, injunctions and related provisions set forth in Article XI of the Plan and determines that they are (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for a hearing; and (e) a bar to any of the Holders of Claims and Interests asserting any Claim or Cause of Action thereby released; <u>provided</u>, <u>however</u>, that the releases by Holders of Claims and Interests as set forth in Article XI of the Plan shall not apply to those parties that have properly elected to opt out of the Article XI Plan releases in accordance with the Disclosure Statement Order.  In accordance with the Ballots approved by the Bankruptcy Court pursuant to the Disclosure Statement Order, those parties that affirmatively voted to accept

the Plan are not entitled to opt out of the releases contained in Article XI of the Plan and are bound by the releases and any such opt out election shall be deemed null and void.

    (a)    <u>Released Parties</u>

    **For purposes of this section, "<u>Released Parties</u>" means (i) each Debtor and its Affiliates, and each Reorganized Debtor and its Affiliates, (ii) the First Lien Indenture Trustee and the related collateral trustee, (iii) the Consenting First Lien Noteholders, (iv) each of the Second Lien Indenture Trustees and the related collateral trustees, (v) the Consenting Second Lien Noteholders, (v) the Bell/Staton Parties, and (vi) with respect to the foregoing, each of their respective direct or indirect subsidiaries, current officers and directors, former officers and directors serving as of the Petition Date, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors and assigns.**

    (b)    <u>Releases by Debtors</u>

    **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Person or Entity seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan (<u>other than the rights of the Debtors, the Reorganized Debtors, or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder</u>) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; <u>provided</u>, <u>however</u>, that nothing in Section 11.01(b) of the Plan:**

        (i)    **constitutes a waiver of any right of the Reorganized Debtors to: (x) enforce all rights and claims concerning any and all intellectual property (including, without limitation, trademarks, copyrights, patents, customer lists, trade secrets and confidential or proprietary business information), all of which rights are expressly reserved and not released and (y) assert any defense based on whether or not applicable standards have been met;**

        (ii)    **shall operate as a release, waiver or discharge of any Causes of Action or liabilities as of the Effective Date arising out of willful misconduct, fraud or criminal acts of any such Released Party as determined by a Final Order; or**

(iii)    shall restrict the Securities and Exchange Commission from pursuing any regulatory or police enforcement action against the Debtor, the Reorganized Debtors or any other Released Party in any forum.

(c)    Releases by Holders of Claims and Interests

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Holders of Claims against and Interests in the Debtors and the Reorganized Debtors (excluding Class 7 Claims or Class 8A Interests): (1) who vote to accept the Plan, (2) who are presumed to have voted for the Plan under section 1126(f) of the Bankruptcy Code and do not return an opt-out notice indicating their refusal to grant the ~affirmative vote for~ releases provided in this sub-paragraph, or (3) who reject the Plan or abstain from voting and do not return their Ballot to indicate their refusal to grant the releases provided in this sub-paragraph, shall be deemed to forever release, waive, and discharge each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan (other than the rights of the Debtors, the Reorganized Debtors, or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that nothing in Section 11.01(c) of the Plan shall operate as a release, waiver or discharge of (i) any Causes of Action or liabilities as of the Effective Date arising out of willful misconduct, fraud or criminal acts of any such Released Party as determined by a Final Order or (ii) any Disputed Claims that become Allowed Claims after the Effective Date.

(d)    Discharge of the Debtors

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on such Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such

debt accepted the Plan.   The Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan.

As of the Effective Date, <u>except as provided in the Plan or the Confirmation Order</u> and with respect to any Disputed Claims that become Allowed Claims after the Effective Date, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors or any of their assets or properties, any other or further Claims, Interests, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

Notwithstanding anything in the Plan or the Confirmation Order to the contrary, and solely with respect to any police or regulatory power of the Securities and Exchange Commission, the discharge provisions contained herein shall not operate to expand the Debtors' discharge beyond that established by the Bankruptcy Code unless otherwise agreed to in writing by the Securities and Exchange Commission and the Debtors or the Reorganized Debtors as applicable.

(e)      <u>Injunctions</u>

<u>Except as provided in the Plan or the Confirmation Order</u>, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, or other debt or liability that is discharged pursuant to Section 11.02 of the Plan, released pursuant to Section 11.01 of the Plan, or is subject to exculpation pursuant to Section 11.04 of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective affiliates or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a right of setoff or subrogation of any kind against any debt, liability, or obligation due to the Debtors or the Reorganized Debtors; OR (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

Without limiting the effect of the foregoing provisions of Section 11.03 of the Plan upon any Person, by accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest receiving a Distribution pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in Section 11.03 of the Plan.

Nothing in Section 11.03 of the Plan shall impair (i) the rights of any Holder of a Disputed Claim to seek allowance of its Claim, (ii) the rights of any defendant in an Avoidance Action Filed by the Debtors to assert defenses in such action, or (iii) the rights of any party to an Executory Contract or Unexpired Lease that has been assumed by the Debtors pursuant to an order of the Bankruptcy Court or the provisions of the Plan to enforce such assumed contract or lease.

Notwithstanding anything in the Plan or the Confirmation Order to the contrary, and solely with respect to any police or regulatory power of the Securities and Exchange Commission, the injunction provisions contained herein shall not operate to expand the scope of the injunctions under the Plan beyond that established by the Bankruptcy Code unless otherwise agreed to in writing by the Securities and Exchange Commission and the Debtors or the Reorganized Debtors as applicable.

    (f)    <u>Exculpation and Limitations of Liability</u>

For purposes of this section, "<u>Exculpated Parties</u>" means each Debtor and its Affiliates, and each Reorganized Debtor and its Affiliates and with respect to the foregoing, each of their respective direct or indirect subsidiaries, current officers and directors (including Bell and Staton), former officers and directors serving as of the Petition Date, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors and assigns.

On the Effective Date, the Exculpated Parties shall neither have, nor incur any liability to any Holder of a Claim or an Interest, the Debtors, the Reorganized Debtors, or any other party-in-interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Disclosure Statement or the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that are the result of willful misconduct, gross negligence, fraud or criminal acts as determined by a Final Order; provided, however, that (i) the foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law; (ii) each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; and (iii) the foregoing exculpation shall not be deemed to, release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' obligations or covenants arising pursuant to the Plan or the Confirmation Order.

Notwithstanding anything in the Plan or the Confirmation Order to the contrary, and solely with respect to any police or regulatory power of the Securities and Exchange Commission, the exculpation provisions contained herein shall not operate to expand the Exculpated Parties' exculpation beyond that established by the Bankruptcy Code unless

otherwise agreed to in writing by the Securities and Exchange Commission and the Debtors or the Reorganized Debtors as applicable.

41.     Term of Injunctions and Automatic Stay.  Unless otherwise provided in the Plan, all injunctions or stays arising under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

42.     Preservation of Setoff and Recoupment Rights.  Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall bar any Creditor (including the United States) from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other applicable provision of the Bankruptcy Code.

43.     Lease Obligations.  Notwithstanding any of the releases, discharges, injunctions or waivers set forth in the Plan, and other than with respect to those obligations that became due and owing prior to the Cure Response Deadline, nothing in the Plan shall modify the obligations of the Reorganized Debtors and their landlords with respect to the ongoing obligations under any assumed non-residential real property lease agreements, irrespective of whether such obligations first arose or accrued before or after the Effective Date of the Plan

44.     Nonoccurrence of Effective Date.  If the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests

in, the Debtors, or any Avoidance Actions, Litigation Rights or other claims by or against the Debtors or any Person or Entity, (ii) prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person or Entity.

45.     Notice of Entry of Confirmation Order and Effective Date.  Pursuant to Bankruptcy Rules 2002(f), 2002(k) and 3020(c), on or before the tenth (10th) Business Day following the Effective Date, the Reorganized Debtors shall electronically file with the Bankruptcy Court and serve notice of entry of this Confirmation Order and occurrence of the Effective Date by causing notice of entry of the Confirmation Order and occurrence of the Effective Date to be delivered by email or first-class mail, postage prepaid, to all parties having been served with the Disclosure Statement Order.  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

46.     Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan Supplement, and all other documents and agreements necessary to implement the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

47.     Severability.  Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court, is valid and enforceable pursuant to its terms.

48.     Reference to Plan Provisions.  The Plan is confirmed in its entirety as to each Debtor and is hereby incorporated into this Confirmation Order by reference (subject to any provision incorporated by such reference being governed by an express and contradictory provision herein).  The failure to reference or discuss any particular provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the

effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan, the Plan Supplement, or any related document shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.

49.   Headings.  Headings utilized in this Confirmation Order are for convenience and reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

50.   Conflicts with Confirmation Order.   To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.

51.   Final Order.  This Confirmation Order is a final order and the period in which any appeal must be filed shall commence immediately upon the entry hereof.

52.   Stay of Confirmation Order.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

53.   Separate Confirmation Orders.  This Confirmation Order is and shall be deemed a separate and final Confirmation Order with respect to each of the Debtors in each Debtors' Chapter 11 Cases for all purposes. The Clerk of the Bankruptcy Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors.

Dated:   December 16, 2013
Wilmington, Delaware

_____
Honorable Christopher S. Sontchi